## DEBNAM v. CHITTY.

(Filed December 20, 1902.)

1. STATUTES—*Legislative Journals—Yeas and Nays—Presumptions—Taxation—The Constitution, Art. II, Sec. 14.*

The constitutional provision that the yeas and nays on the second and third readings of a bill to raise money by taxation or by borrowing shall be entered on the journal is mandatory, and the failure to record those voting nay on such a bill renders the act void, and if no one votes in the negative, the journal should so state.

2. ESTOPPEL—*Bonds—Recitals.*

The recitals in bonds that they are issued in compliance with all the requirements of the constitution and laws of the state, do not estop those issuing the bonds from contesting their legality.

3. FORMER ADJUDICATION—*Judgment—Bonds.*

A judgment in an action that bonds are not illegal because of irregularity in the election authorizing the same, does not estop those issuing the bonds from contesting the validity thereof in a subsequent action, for the reason that the act authorizing the bonds was not passed in accordance with the requirements of the constitution.

4. FORMER ADJUDICATION—*Bonds—Judgments—Coupons.*

A judgment in a federal court establishing the validity of the coupons to certain bonds does not estop those issuing the bonds from denying the validity of the bonds.

FURCHES, C. J., dissenting.
CLARK, J., dissenting in part.

ACTION by T. H. Debnam against J. C. Chitty, Tax Collector in Murfreesboro Township, Hertford County, heard by Judge *George A. Jones,* at October Term, 1902, of the Superior Court of HERTFORD County.

This is an action to declare invalid certain bonds issued by Murfreesboro Township, in Hertford County, and to en-

join the payment thereof. It stands upon demurrer to the complaint, which is as follows:

"The plaintiff, complaining, alleges:

"1. That he is an actual *bona fide* resident and tax-payer in the said township.

"2. That the defendant is the duly appointed and qualified Tax Collector in said township, charged with the duties of collecting all public and special taxes levied in said township.

"3. That on the 7th day of March, 1887, the General Assembly of North Carolina passed and ratified an act to incorporate the Murfreesboro Railroad Company, and published in the Laws of North Carolina, session 1887, as Chap. 365.

"4. That said chapter provided, among other things, that the township of Murfreesboro, in said county, might subscribe to the capital stock of said railroad to an amount not exceeding $25,000, and also provided for an election to be held in said township upon the question of such subscription; and an election was held, and the Board of County Commissioners of said Hertford County did, on the 19th day of September, 1887, under the provisions of said act, and after finding as a fact that a majority of the qualified voters of said township had voted for said subscription, execute twenty-five negotiable coupon bonds, each for the sum of $1,000, numbered one to twenty-five (1 to 25), consecutively, the first thereof payable ten years after February 1, 1888, and each succeeding bond payable each successive year thereafter until all are paid.

"5. That said bonds were issued with coupons for $60 each attached thereto, for the interest thereon at 6 per cent per annum, until the maturity of said bonds, as aforesaid. All of said coupons being of like tenor and effect, and one thereof on each bond being payable to bearer on the 1st day of February of each year—a copy of one of said bonds and a copy of some of said coupons are attached to the record of a suit

in the United States Court, at Raleigh, N. C., hereinafter made an exhibit and part of this complaint, and marked Exhibit 'B.'

"6. That on the said 7th day of March, 1887, said General Assembly passed another act, entitled 'An act to permit Murfreesboro Township and the town of Murfreesboro, in Hertford County, to vote bonds for the building of a railroad,' it being chapter 286 of the Laws of North Carolina, at session 1887.

"7. That said act provided, among other things, for said township to subscribe to the capital stock of the Roanoke and Tar River Railroad Company.

"8. That no election was ever held under said last named act, and no bonds were ever issued thereunder.

"9. That said General Assembly, in said chapter 365, Laws 1887, section 30, attempted to incorporate said Murfreesboro Township, and further attempted to make the County Commissioners of said county the corporate agents of said township, which chapter is hereby referred to as a part of this complaint.

"10. That said General Assembly, in said chapter 286, section 16, Laws of 1887, also attempted to incorporate said township and to make said County Commissioners its corporate agents, which said chapter is hereby referred to as a part of this complaint.

"11. That the plaintiff is informed and believes and advised that said chapter 365, so far as it attempted to authorize said township to subscribe to the capital stock of the Murfreesboro Railroad Company, and to vote bonds for that purpose, as provided for in said chapter, and the issuing of bonds for said township, the holding of an election thereunder and the incorporation of said township and the making of said County Board of Commissioners its corporate agents, as attempted in said chapter, and all other sections and provis-

ions of said chapter looking to the creation of a debt against said township, are absolutely void and unconstitutional, in that said chapter or act was not passed by the General Assembly of North Carolina as required by Article II, section 14, of the Constitution of North Carolina.

"12. That the said act to incorporate the said Murfreesboro Railroad Company, being said chapter 365, as appears from the Senate and House Journals of said session of said General Assembly, was passed, as shown by said Journals, as follows:

"SENATE JOURNAL.

"Forty-seventh day. Senate Chamber, February 28, 1887. Page 486.  H. B. 948, S. B. 897, bill to incorporate the Murfreesboro Railroad Company.   Referred to the Committee on Corporations.   On same day Committee on Corporations reported as follows: 'By Mr. Green: H. B. 948, S. B. 897, bill to incorporate the Murfreesboro Railroad Company, recommending it do pass' (page 501).   On the forty-ninth day, March 2, said bill was put upon its second reading, and the following record appears on the Journal: 'H. B. 948, S. B. 897, bill to incorporate the Murfreesboro Railroad Company, on its second reading.   The bill passed its second reading— ayes 31, noes none, as follows: Those voting in the affirmative were: Messrs. Adams, Alexander, Bailey, Colley, Crouse, Crowder, Elias, Epps, Fields, Fox, Greene, Griffin, Harrison, Jenkins, Kerr, Lillington, Mason of Chatham, Murrow, Pemberton, Pou, Sanders, Shaw, Stephenson, Terrell, Turner, Warren, Webb, Williams of Davidson, Wilson and Winston—31' (pages 562 and 563).   Fifty-first day.   Senate Chamber, March 4, 1887 (page 644): H. B. 948, S. B. 897, bill to incorporate the Murfreesboro Railroad Company, passed its third reading—ayes 28, noes none, as follows: Those voting in the affirmative were: Messrs. Colley, Cook,

Crouse, Crowder, Elias, Epps, Fields, Fox, Greene, Griffith, Jenkins, Kerr, Lockey, McCormick, McIver, Pemberton, Pou, Persell, Saunders, Shaw, Simpson, Spruill, Stephenson, Sutton, Tull, Williams of Davidson, Williamson and Winston—28. The bill was ordered enrolled.'

"The record of the passage of said bill as appears as follows from the

### "HOUSE JOURNAL.

"Thirty-ninth day. House of Representatives, Friday, February 18, 1887.

#### "INTRODUCTION OF BILLS AND RESOLUTIONS.

"By Mr. Stancill: H. B. 948, a bill to incorporate the Murfreesboro Railroad Company. Referred to the Committee on Railroads, Postroads and Turnpikes (see page 399).

"Fortieth day. House of Representatives, Saturday, February 19, 1887.

#### "REPORT OF COMMITTEES.

"From the Committee on Railroads, Postroads and Turnpikes. By Mr. Sutton: H. B. 948, a bill to incorporate the Murfreesboro Railroad Company, recommending that it do pass (page 412).

"Forty-first day. House of Representatives, Monday, February 21, 1887.

#### "CALENDAR.

"H. B. 948, a bill to incorporate the Murfreesboro Railroad Company, passes its second reading by the following vote, and takes its place on the Calendar: Those voting in the affirmative are: Messrs. Allman, Ashcraft, Beason, Bennett, Bingham, Blevins, Blount, Brogden, Candler, Chap-

DEBNAM *v.* CHITTY.

pell, Cherry, Crisp, Doughton, Davis, Deaver, Ellis, Franklin, Felton, Fries, Hampton, Hayes, Hinton, Holman, Holt, Hoover, Howe, Hussey, Kell, King, Leaser, Lindsay, Macon, Manning, Martin, Meares, McClure, McKinnon, Newsome, Parham, Pascall, Patton, Person, Pritchard, Rawles, Redding, Reagon, Sanders, Shaw, Snell, Snipes, Sorrel, Southerland, Spellar, Stancill, Stephens, Stewart, Sutton, Surrat, Swain, Thomas, Ward, Watson of Hyde, Watson of Vance, Watts, Webster of Caswell, Wells, White of Halifax, Woodey, Worth and York—70 (see pages 460 and 461).

"Forty-sixth day.  House of Representatives, Monday, February 28, 1887.

" 'CALENDAR (pages 560 and 561).

" 'H. B. 948, a bill to incorporate the Murfreesboro Railroad Company, passes its third reading by the following vote, and is ordered sent to the Senate without engrossment: Those voting in the affirmative are: Messrs. Abell, Allman, Ashcraft, Beason, Bell, Bennett, Bingham, Blevins, Blount, Brogden, Candler, Chappell, Cheek, Cherry, Coffey, Copeland, Crawford of Haywood, Crawford of McDowell, Cranshaw, Crisp, Croom, Doughton, Deaver, Dawsett, Elliss, Evans, Franklin, Fries, Gatling, Gray, Greene, Halstead, Hampton, Harrington, Hayes, Hinton, Holloway, Holman, Hull, Hussey, Jordan, Kell, King, Lindsay, Lyon, Macon, Mangum, Manning, Meares, Moore, Morgan, McKinnon, McMillan, Newsome, Oakley, Osborne, Parham, Pascall, Patton, Pinnix, Pritchett, Redding, Reagan, Sanders, Sharp, Shaw, Shenk, Snell, Snipes, Sorrell, Southerland, Spellar, Stancill, Stewart, Sutton, Surrat, Thomas, Tilley, Turner, Ward, Watson of Hyde, Watson of Vance, Watters, Watts, Wells, White of Halifax, White of Perquimans, Williams, Williamson, Wilson, Woodey, Worth and York—94.'

"13. That in the passage of said bill in the House of Representatives, on its second and third readings, no record was made in the Journal of said House of the names of those Representatives voting in the negative, nor does said Journal show that there were no votes in the negative on the second and third readings of said bill.

"14. That the plaintiff is advised and believes, and so alleges, that the passage of said bill, as above set out, was absolutely void, under Article II, Sec. 14, of the Constitution of North Carolina, and conferred no powers, rights or duties on said township to create any indebtedness against said township, or to issue any obligation of said township.

"15. That plaintiff is informed and believes, and so avers, that said act, being void, conferred no powers, rights or duties on said Board of County Commissioners to act as agent for said township, and the bonds issued by them, as aforesaid, are absolutely void, and constitute no evidence of indebtedness against said township.

"16. That said General Assembly, in chapter 286, Laws of 1887, aforesaid, attempted to incorporate said Murfreesboro Township, and further attempted therein to make the County Commissioners of said county the corporate agents of said township, which chapter is hereby referred to as a part of this complaint.

"17. That the plaintiff is informed and believes and advised that said chapter 286, so far as it attempted to authorize said township to subscribe to the capital stock of the Roanoke and . . . . . . . . against said township, and the making of said County Board of Commissioners its agents, and all other sections and provisions of said chapter looking to the creation of any debt against said township, and the making of said Board of Commissioners its agents for any such purpose, are absolutely void and unconstitutional, in that said chapter was not passed by the General Assembly of North Carolina as

required by Article II, Sec. 14, of the Constitution of North Carolina, the *yeas* and *nays* of those voting on the second and third readings of said bill were not entered in the Journal of the House of Representatives.

"18. That said chapter 286, which is entitled 'An act to permit Murfreesboro Township and the town of Murfreesboro, in Hertford County, to vote bonds for the building of a railroad,' was read and passed in the House of Representatives, as shown by its Journal, as follows:

" 'HOUSE JOURNAL.

" 'Thirty-fifth day.   House of Representatives, February 14, 1887.

" 'INTRODUCTION OF BILLS AND RESOLUTIONS.

" 'By Mr. Stancill: H. B. 807, a bill to authorize Murfreesboro Township and the town of Murfreesboro, in Hertford County, to vote bonds for the building of a railroad. Referred to the Committee on Railroads, Postroads and Turnpikes (page 343).

" 'Thirty-eighth day.   House of Representatives, Thursday, February 17, 1887.

" 'REPORTS OF COMMITTEES.

" 'From the Committee on Railroads, Postroads and Turnpikes.   By Mr. Farmer: H. B. 807, a bill to authorize Murfreesboro Township and the town of Murfreesboro, in Hertford County, to vote bonds for the building of a railroad, recommending certain amendments, and, as amended, that it do pass (page 380).

" 'Fortieth day.   House of Representatives, Saturday, February 19, 1887.

DEBNAM *v.* CHITTY.

" 'THE CALENDAR.

" 'H. B. 807, a bill to authorize Murfreesboro Township and the town of Murfreesboro, in Hertford County, to vote bonds for the building of a railroad, passes its second reading by the following vote: Those voting in the affirmative are: Messers. Allman, Ashcraft, Beason, Bingham, Blevins, Brogden, Candler, Chappell, Cherry, Chilcutt, Coffey, Copeland, Crawford of McDowell, Crisp, Croom, Doughton, Dawsett, Elliss, Evans, Franklin, Felton, Fries, Gatling, Gray, Greene, Hayes, Hinton, Holloway, Hoover, Howe, Hussey, Jordan, Kell, King, Leaser, Long, Lamb, Macon, Manning, Martin, Mills, Morgan, McKinnon, McMillan, Newsome, Oakley, Osborne, Overman, Pascal, Patton, Person, Pinnix, Pittman, Pritchett, Redding, Reagan, Sanders, Shaw, Shenk, Snell, Snipes, Sorrell, Southerland, Spellar, Stancill, Stephens, Stewart, Sutton, Surrat, Swain, Thomas, Watson of Hyde, Watts, Webster of Caswell, White of Halifax, White of Perquimans, Wilson, Wimberly, Woodey, Worth and York —81 (pages 421 and 422).

" 'Forty-first day. House of Representatives, Monday, February 21, 1887.

" 'THE CALENDAR.

" 'H. B. 807, a bill to authorize Murfreesboro Township and the town of Murfreesboro, in Hertford County, to vote bonds for the building of a railroad, passes its third reading by the following vote, and is ordered engrossed. Those voting in the affirmative are: Messrs. Allman, Ashcraft, Beason, Bennett, Bingham, Blevins, Blount, Brogden, Candler, Chappell, Cherry, Chilcutt, Coffey, Copeland, Crisp, Croom, Doughton, Davis, Ellis, Evans, Ewart, Franklin, Felton, Fries, Gray, Halstead, Hampton, Hayes, Hinton, Holloway, Holeman, Holt, Hoover, Howe, Hull, Hussey,

Jordan, Kell, King, Lindsay, Macon, Manning, Martin, Meares, Mills, Morgan, McClure, McKinnon, McMillan, Newsome, Oakley, Osborne, Parham, Pascall, Patton, Person, Pritchard, Rawles, Redding, Reagan, Sanders, Shaw, Snell, Snipes, Sorrell, Southerland, Spellar, Stancill, Stephens, Stewart, Sutton, Surratt, Swain, Thomas, Ward, Watson of Hyde, Watson of Vance, Watters, Watts, Webster of Caswell, Wells, White of Halifax, White of Perquimans, Williams, Wilson, Wimberly, Woodey, Worth and York—89' (page 452).

"19. That in the passage of said bill in the House of Representatives, as aforesaid, on its second and third readings, no record was made on the Journal of said House of the names of those Representatives voting in the negative, nor does said Journal show that there were no votes in the negative on the second and third readings of said bill.

"20. That the plaintiff is advised and believes, and so alleges, that the passage of said bill, as above set out, was absolutely void under Article II, Sec. 14, of the Constitution of North Carolina, and conferred no powers, rights or duties on said township to create any indebtedness against said township.

"21. That plaintiff is informed and believes, and so avers, that said act, being void, conferred no powers, rights or duties upon said Board of County Commissioners to act as agent for said township, and the bonds issued by them as aforesaid are absolutely void, and constitute no evidence of indebtedness against said township.

"22. That the petition for said election in said township was asked for by the taxpayers under said chapter 365, and the election aforesaid was held under the provisions of said chapter, and all the orders and records of the Board of County Commissioners for said county, declaring the results of said election, and directing the issuing of the bonds afore-

said, show upon their face that said election was held and said bonds were issued by virtue of the provisions of said chapter 365.

"23. That the plaintiff is informed and believes, and so avers, that said chapter 365 is also void under said article and section of said Constitution, in that it appears from the Journals of the Senate and House, as aforesaid, it was not read three several times in each House of the General Assembly and passed three several readings *on three different days.* It appearing from said Journals that said bill, chapter 365, was put on its last and third reading in the House on February 28, 1887, and in the Senate, on its first reading, on the 28th day of February, 1887, as appears from the House Journal and Senate Journal of that date.

"24. That at Fall Term, 1887, of the Superior Court of Perquimans County, in this State, one W. T. Brown, then a resident and taxpayer in said Murfreesboro Township, and the Board of Commissioners of Hertford County, and the Murfreesboro Railroad Company, in an action upon an agreed state of facts, entitled 'W. T. Brown, for himself and all other taxpayers in Murfreesboro Township, Hertford County, State aforesaid, against the Board of Commissioners of Hertford County and the Murfreesboro Railroad Company,' in which was submitted to the Court a series of questions involving the regularity of said election and the issuing of said bonds. The judgment of the lower Court was in favor of the defendants, and an appeal from said judgment to the Supreme Court was taken by the plaintiff. The judgment of the lower Court was reversed, and the opinion of the Supreme Court is found in volume 100 of the Supreme Court Reports, page 92.

"25. That the question as to whether said chapters 365 and 286 were passed as required by Article II, Sec. 14, of the Constitution of North Carolina, were not embraced in the

facts submitted to the Court for its decision, and were in no way passed upon and adjudicated by the Court, and this plaintiff is informed and believes, and so avers, that the matters and things therein adjudicated are not binding in law upon him, and it can not affect his rights in this action, nor does it or can it tend to establish the validity of said bond. A copy of the record of said controversy is hereby submitted as a part of this complaint, to show what was there adjudicated between the parties to that controversy, and marked Exhibit 'A.'

"26. That the plaintiff is informed and believes that said bonds, with the coupons thereto attached, was sold to one Jacob Tome, but this plaintiff knows nothing of the circumstances of such purchase.

"27. That on the 15th day of November, 1893, said Jacob Tome sued out a summons in the United States Circuit Court at Raleigh, N. C., entitled Jacob Tome against Murfreesboro Township, in the county of Hertford, State of North Carolina, in which the Marshal of the Eastern District of North Carolina was commanded to summons Murfreesboro Township, in the county of Hertford, State of North Carolina, by service upon the corporate agents, the Board of Commissioners of Hertford County, State of North Carolina, to appear before the Judges of said Court, at the November Term, 1893, and answer the complaint, etc.

"28. That said summons, as shown by the return of the Marshal, was served November 17, 1893, on W. T. Brown, Chairman Board of Commissioners of Hertford County, as appears from the Marshal's returns, and on or about the 29th day of November, 1893, said Jacob Tome filed his complaint, in which (he) alleged that the defendant was a corporation duly incorporated under said chapter 365, and that said township, in pursuance of an election held in said township, caused its bonds, to the amount of $25,000, to be issued by

said County Commissioners, for $1,000 each, with coupons, and that plaintiff was the owner of said bonds and coupons, and asked for judgment against said township for $3,000 of said coupons, with interest due thereon.

"29. That said Board of County Commissioners caused an answer to be filed on the 3d day of May, 1894, to said complaint.

"30. That on the 8th day of May, 1896, said Jacob Tome caused the Board of Commissioners of Hertford County to be made a party-defendant in said proceeding.

"31. That said Tome, by leave of the Court, filed an amended complaint in said proceeding May 26, 1896.

"32. That on the 18th day of December, 1896, said Board of County Commissioners filed their amended answer.

"33. That said Board of County Commissioners, on the 29th day of November, 1895, caused an amended answer to be filed in the proceedings already begun.

"34. That in February, 1897, issues were submitted to a jury at the hearing of said proceeding, and the jury responded, and his Honor, Chas. H. Simonton, rendered judgment in said proceeding against said Murfreesboro Township for the sum of $3,810, with interest on $3,000 thereof from the 1st day of February, 1897, until paid, at the rate of 6 per centum per annum, 'together with the costs of this action, to be taxed by the Clerk'; and further adjudged that a peremptory writ of mandamus be issued to the defendant Board of Commissioners of Hertford County, commanding them to levy a tax on the property and poll in said Murfreesboro Township to pay off and discharge said judgment—a copy of all the papers mentioned and referred to in sections 27, 28, 29, 30, 31, 32, 33 and 34 of this complaint are hereby annexed, marked Exhibit 'B.'

"35. That thereafter said Board of Commissioners, during the years 1897, 1898, 1899, 1900 and 1901, levied on

the property and polls of said township, as provided for in said chapter 365, an annual tax, and, as plaintiff is informed and believes, said Board of Commissioners has made the following payments on the above judgment from taxes collected from said township, to-wit: May 14, 1898, $271.24, costs, and $728.26 on said judgment; August 25, 1899, $495; September 29, 1899, $247.50; April 11, 1900, $712.80; May 1, ·1901, $693; September 10, 1902, $1,173.80, leaving ·a balance due on that date on said judgment of about $602.31.

"36. That the plaintiff is informed and believes that said judgment is void, for the reason that the statutes under which said bonds were issued were void, and they constitute no debt against said township.

"37. That the pleadings in said proceeding were not the act of the Murfreesboro Township, and that said Court never had jurisdiction over said township, and that any judgment rendered against said township was absolutely void.

"38. That the pleadings did not put in issue in said proceeding as to whether said chapters 365 and 286 were passed by the General Assembly of North Carolina as required by Article II, Sec. 14, of the Constitution of North Carolina, and that question has not been adjudicated in said proceeding, and that said judgment is fraudulent and void as to this plaintiff.

"39. That again, on the 1st day of May, 1897, said Jacob Tome sued out a summons from said Circuit Court, entitled Jacob Tome against Murfreesboro Township, in Hertford County, and the Board of Commissioners of Hertford County, and the individuals constituting the said Board of Commissioners, commanding .the Marshal of said Court to summon the Murfreesboro Township, in Hertford County, the Board of Commissioners of Hertford County, and Geo. H. Mitchell, .etc., the individuals constituting the said Board of Commissioners, to appear before the Judge of said Court on

the fourth Monday in May, 1897, and, as appears from the returns of said Marshal, that said summons was served May, 3, 1897, by delivering copies to Geo. H. Mitchell, Chairman of the Board of Commissioners of Hertford County, and A. I. Parker, J. C. Vinson, E. T. Snipes and J. B. Vaughan, members of said Board, and on the 21st of May, 1897, said Tome filed his complaint in said proceeding, in which he declared on $6,000 of the coupons attached to said bonds.

"40. That at December Term, 1898, of said Court the personal representatives of said Tome obtained a judgment before Thos. R. Purnell, Judge of said Court, against said township, for $7,205, with interest on $6,000 from December 5, 1898, until paid, at 6 per cent per annum, together with the costs of the action, to be taxed by the Clerk.

"41. That a copy of the summons, complaint and judgment in said action, and the memoranda and returns thereon, are hereto attached, and marked Exhibit 'C.'

"42. That the plaintiff is informed and believes that said Murfreesboro Township never had any corporate existence, that said Court never had jurisdiction of the taxpayers therein, and that said judgment is absolutely void, and ought not to estop the plaintiff or affect him in the relief sought for in this action.

"43. That the plaintiff is informed and believes that the fact as to whether said chapters 365 and 286 were passed and enacted by the General Assembly of North Carolina, as required by Article II, Sec. 14, of the Constitution of said State, were not passed upon and adjudicated in said proceeding.

"44. That on the 2d day of June, 1902, said Board of County Commissioners levied a tax on all the property in said township, of twenty-five cents on the hundred dollars valuation of property, and seventy-five cents on the poll, on all taxpayers in said township liable to pay poll tax, and

made out a tax list and placed it in the hands of the defendant, Tax Collector for said township, for collection, to pay the amount due on said bonds and the coupons thereto attached, and which are matured, and the said void judgments.

"45. That the defendant, Tax Collector as aforesaid, has said tax list in his hands, and is threatening to levy upon the property of the plaintiff for the tax assessed as aforesaid against the plaintiff.

"46. That the assessed value of the taxable property in said township is $459,976, as plaintiff is informed and believes.

"47. That the amount of tax assessed against the plaintiff, as aforesaid, is six dollars and thirty-one cents ($6.31).

"48. That the plaintiff is informed and believes that said Jacob Tome died several years ago, leaving a last will and testament, in which he bequeathed said bonds and coupons to a corporation in the State of Maryland, its name being unknown to the plaintiff.

"49. That the plaintiff has no knowledge sufficient to form a belief as to who is the present holder of said bonds and coupons.

"50. That the number of taxable polls in said township is 316, as plaintiff is informed and believes.

"51. That plaintiff is informed and believes that the property and poll tax levied as aforesaid, and now in the hands of the defendant for collection, amounts to $1,386.94.

"52. That plaintiff is informed and believes that on the trial of said suits of said Jacob Tome, in which a judgment was rendered in 1897, the question as to whether the act or acts described in the pleadings, and under which said bonds were issued, was passed by the General Assembly in accordance with Article II, Sec. 14, of the Constitution of North Carolina, was not presented to the Court, nor considered by the Court, and no evidence on that point was introduced, and

the Court did not pass upon that question in rendering its judgment, nor was that question raised and considered by the Court in rendering its judgment in the second suit in the said United States Court.

"Wherefore, the plaintiff prays that the defendant be forever enjoined from collecting said tax so assessed against the plaintiff and the other taxpayers of said township, and that said bonds and coupons, in whosoever hands they may be, be declared fraudulent and void; (2) that said judgment taken by said Jacob Tome be declared void; (3) that said judgment taken by the personal representatives of Jacob Tome be declared void; (4) that said chapters 365 and 286, of the Laws of the Session of 1887, so far as they relate to said Murfreesboro Township and the appointment of the Board of Commissioners of Hertford County as the corporate agents of said township, be declared unconstitutional and void, and that all acts done by said Board of County Commissioners in the name of or for said township, under said chapters, or otherwise, be declared void; (5) and for such other and general relief as the plaintiff may be entitled."

Demurrer and judgment are as follows:

"The defendant demurs to the complaint of the plaintiff, and assigns the following causes therefor:

"1st. That the complaint fails to set forth facts sufficient to constitute a cause of action.

"2d. That it appears from said complaint that the Board of Commissioners for said Hertford County was the duly constituted agents for said Murfreesboro Township, with full power and authority to execute and deliver the bonds and coupons described.

"3d. That it appears from the complaint that Murfreesboro Township, the maker of said bonds and coupons, and all the taxpayers of said township are estopped by the judgments of the Circuit Court of the United States for the Fourth

Circuit, in North Carolina, the records of which are attached to the complaint as a part thereof, from raising the question of the validity of said bonds, and the questions sought to be raised by the plaintiff in his complaint are *res adjudicata.*

"4th. That the plaintiff is also estopped from denying the validity of said bonds and coupons by the judgment in the controversy of W. T. Brown against the Board of County Commissioners of Hertford County, the record of which is annexed to the complaint as a part thereof.

"5th. That it does not appear from the complaint that the acts of the Legislature are not unconstitutional and void.

"6th. That copies of two of said bonds and coupons are attached to the records of the two suits in the United States Circuit Court aforesaid, and are made a part of the plaintiff's complaint, and it appears from the recitals of said bonds and that the issuing of said bonds was legal, and that all requirements of the Constitution and laws of the State of North Carolina have been complied with, authorizing the execution of said bonds and coupons.

"Wherefore, the defendant prays that the prayers of plaintiff be denied, and that this action be dismissed at the cost of plaintiff.

"JUDGMENT IN SUPERIOR COURT.

"By consent, this cause is called for hearing at this term of said Court, and being heard upon the complaint and demurrer:

"It is, on motion of Winborne & Lawrence, attorneys for plaintiff, considered and adjudged that the demurrer of the defendant be, and the same is hereby, in all respects, overruled.

"It is further adjudged that the chapters two hundred and eighty-six (286) and three hundred and sixty-five (365), of the Laws of North Carolina passed by the General Assembly

at its session eighteen hundred and eighty-seven (1887), be, and the same are hereby, declared unconstitutional and void, in that they were not passed by said General Assembly in the manner required by Article two (II), section fourteen (14), of the Constitution of said State.

"It is further adjudged that the plaintiff is not estopped by the judgments and proceedings in the suits mentioned in the complaint, the records of which are attached to the complaint as parts thereof.

"It is further adjudged that the bonds and coupons described in the complaint as having been issued and executed by the Commissioners of Hertford County for Murfreesboro Township, as set out in said complaint, are void in whosoever's hands they may be, and constitute no obligation or evidence of indebtedness against said township, or the taxpayers therein.

"It is further adjudged that the tax levied by the Board of Commissioners of said Hertford County on the 2d day of June, 1902, on the property and poll of the taxpayers of said township, as set out in section 44 of the complaint, was illegal and void.

"It is further adjudged and decreed that the defendant be, and he is hereby, forever enjoined from collecting from the plaintiff and the other taxpayers in said township, any part of the tax so assessed and levied and placed on the tax list now in his hands for collection.

"It is further adjudged that the plaintiff (recover of) the defendant the costs of this action, to be taxed by the Clerk.

"GEO. A. JONES,
*Judge Presiding.*"

From a judgment for the plaintiff, the defendant appealed.

*Winborne & Lawrence,* for the plaintiff.
No counsel for the defendant.

DOUGLAS, J., after stating the case. As this case stands upon demurrer, all the allegations of fact contained in the complaint must be taken as true for the purposes of this appeal. However, we have not been satisfied with this legal presumption, but have personally examined the original Journal of the House of Representatives, and find that neither act was passed in accordance with the mandatory provisions of the Constitution. We will give the entry on one reading as an example. We find on one page of the Journal the following *written* entry:

"H. B. 948, a bill to incorporate the Murfreesboro Railroad Company, passes its third reading by the following vote, and is ordered to be sent to the Senate without engrossment." On the following page is a *printed* blank, which, with the entries in ink, reads as follows:

"H. B. 948; S. B. . . . . . .  Messrs. Speaker (here follows the printed names of *all* the members of the House, with a simple dash (—) opposite ninety-four names). Ayes 94; nays . . . . . . ; total . . . . . . ."

The only written entries are the figures "948," after the capital letters "H. B.," the dashes opposite the names, and the figures "94" after the word "ayes." The dotted lines after the letters "H. B." and "S. B.," and after the words "ayes" and "nays" and "total," are all printed. There is not the scratch of a pen after the words "nays" and "total." From this it appears that ninety-four members whose names are marked, voted in the affirmative; while there is no statement as to those voting in the negative. If there were any members voting in the negative, their names should have been entered upon the Journal; while if there were none so voting, that fact should be *affirmatively* stated. To say that the mere failure to fill out a printed blank is an affirmative declaration that there were no nays, is a proposition that does not commend itself either to our views of language or of

DEBNAM *v.* CHITTY.

law. If it were affirmatively stated that there were no nays, or that only 94 members voted, the case would be different. Again, if the Journal gave the names of 120 members voting in the affirmative, we would take judicial cognizance of the fact that there were only 120 members of the House, and that therefore there could be no nays; but there are 26 members on the third reading, and 50 members on the second reading, who are not accounted for. We may know as a matter of fact that members are frequently absent; but there is no such presumption. If there were any presumption at all, it would seem to be that the members of the Legislature were present during its sessions in the performance of the responsible duties for which they were elected. Aside from this, we can only repeat what this Court has so often said, that where the names of the members voting in the negative are not given, it must *affirmatively* appear on the Journal that there were none so voting. *Smathers v. Commissioners,* 125 N. C., 480-486; *Commissioners v. DeRossett,* 129 N. C., 279. Section 14 of Article II of the Constitution of this State is as follows: "No law shall be passed to raise money on the credit of the State, or to pledge the faith of the State, directly or indirectly, for the payment of any debt, or to impose any tax upon the people of the State, or to allow the counties, cities or towns to do so, unless the bill for the purpose shall have been read three several times in each House of the General Assembly, and passed three several readings, which readings shall have been on three different days, and agreed to by each House respectively, and *unless the yeas and nays on the second and third reading of the bill shall have been entered on the Journal.*" The italics are ours. This Court has uniformly held that these provisions of the Constitution are *mandatory,* and that any act of the Legislature passed in violation thereof, is at least to the extent of such repugnance, absolutely void. *Bank v. Commissioners,* 119 N. C., 214;

34 L. R. A., 487; *Commissioners v. Snuggs,* 121 N. C., 394; 39 L. R. A., 439; *Charlotte v. Shepherd,* 120 N. C., 411, and 122 N. C., 602; *Rodman v. Town of Washington,* 122 N. C., 39; *Commissioners v. Call,* 123 N. C., 308; 44 L. R. A., 252; *Commissioners v. Payne,* 123 N. C., 432; *McGuire v. Williams,* 123 N. C., 349; *Smathers v. Commissioners,* 125 N. C., 480; *Glenn v. Wray,* 126 N. C., 730; *Commissioners v. DeRossett,* 129 N. C., 275; *Black v. Commissioners,* 129 N. C., 121; *Hooker v. Greenville,* 130 N. C., 472. In *McGuire v. Williams, supra,* this Court says: "It must be considered a settled rule that the provisions of the Constitution in relation to municipal indebtedness and taxation are mandatory, and will be strictly enforced by this Court. So great is their effect, that any act repugnant thereto, at least to the extent of that repugnance, will be declared null and void *ab initio,* not only without legal effect, but without legal existence. It makes no difference when or how such unconstitutionality appears to us."

In *Commissioners v. Call,* 123 N. C., 308, this Court says: "An act of the Legislature passed in violation of the Constitution of the State, or in disregard of its mandatory provisions, is, to the extent of such repugnance, absolutely void; and all bonds issued thereunder bear the brand of illegality stamped upon their face by the hand of the law."

In *Norton v. Shelby County,* 118 U. S., 425, the Supreme Court of the United States says: "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." Under these authorities, we are compelled to hold that the bonds in question, having been issued in clear violation of Constitutional prohibitions, are null and void, and have been so *ab initio.* The defendant contends that the people of the township issuing the bonds are bound by the recitals therein to the effect that they were issued "in compli-

ance with all the requirements of the Constitution and laws of the State of North Carolina." This is not a recital of fact, but the mere statement of a legal conclusion. This point has been directly decided both by this Court and the Supreme Court of the United States. We have repeatedly held that all the constitutional requirements are *mandatory,* and not directory, and that where there is no lawful power to issue bonds, such want of power can neither be cured by recitals nor eliminated by estoppels. *Commissioners v. De-Rossett, supra; Commissioners v. Call, supra.* In *Dixon County v. Field,* 111 U. S., 83, 92, it was held that the estoppel arising from recitals in the face of the bonds never extended to nor covered matters of law, and could arise only "upon matters of fact which the corporate officers had authority to determine and certify." In *County of Davies v. Huidekoper,* 98 U. S., 98, 100, the Court says: "There must be indeed power, which, if formally and duly exercised, will bind the county or town. No *bona fides* can dispense with this, and no recital can excuse it." In *U. S. v. Macon County Court,* 99 U. S., 582, the Court says: "The difficulty lies in the want of original power. While there has undoubtedly been great recklessness on the part of the municipal authorities in the creation of bonded indebtedness, there has not been unfrequently *gross carelessness* on the part of purchasers when investing in such securities. Every purchaser of a municipal bond is chargeable with notice of the statute under which the bond was issued. If the statute gives no power to make the bond, the municipality is not bound." The rule has been clearly laid down in the leading case of *Anthony v. County of Jasper,* 101 U. S., 693, where Chief Justice Waite says: "Dealers in municipal bonds are charged with notice of the laws of the State granting power to make the bonds they find on the market. This we have always held. If the power exists in the municipality, the *bona fide*

holder is protected against mere irregularities in the manner of its execution, but if there is a want of power, no legal liability can be created."

The defendant contends that "the plaintiff is estopped from denying the validity of said bonds and coupons by the judgment in the controversy of W. T. Brown against the Board of County Commissioners of Hertford County." That case was submitted upon an agreed state of facts in a controversy without action, and the validity of the act under section 14 of Article II of the Constitution was in no way involved. Not only was it not decided, but it was not even alluded to in any stage of the proceedings. Therefore, it can not operate as an estoppel under the uniform decisions of this Court. In *Glenn v. Wray,* 126 N. C., 730, this Court says: "The plaintiffs are not estopped by the decision in *Claybrook v. Commissioners,* 117 N. C., 456. That was an action to impeach the validity of the bonds now in question, but upon the ground of irregularity in the election and that alone. The decision therein is conclusive that the bonds are not invalid on that ground. The present action is to attack their validity upon the entirely different ground that the act authorizing an election was not passed in the mode required by the Constitution. This was not within the scope of the litigation in *Claybrook v. Commissioners,* and has not been passed upon. Hence, it is not *res judicata.* * * * Of course, the payment of interest by the Commissioners would be no estoppel. *Commissioners v. Payne,* 123 N. C., 432, and cases cited at page 489." In *Slocumb v. Fayetteville,* 125 N. C., 362, Justice Furches, speaking for the Court, says: "The other important question is this: It is not alleged or denied in either the complaint or answer, whether the acts, chapter 18 and chapter 118, were passed and ratified as required by Article II, section 14, of the Constitution of this State, or not. This must have been done, to make the bonds valid. And the determination of

*this case* will not prevent the question from hereafter being presented; and while the judgment in this case might work an estoppel, we do not say it will, as to the plaintiff Slocumb; it certainly would not as to the other persons, not parties to this action.   *   *   *   We therefore affirm the judgment appealed from.   But if these acts were not passed according to the constitutional provisions cited above, parties taking the bonds may find no protection in this judgment."

The same caution is reiterated in *Black v. Commissioners,* 129 N. C., 121, on page 128.

It is contended that the plaintiff is estopped by the judgments in the United States Circuit Court.   In no event could these judgments operate as an estoppel in any degree beyond the coupons then actually due and embraced in the judgments.   *Nesbitt v. Riverside District,* 144 U. S., 60.   As to such coupons, a majority of this Court think they are *res judicata.*

The Courts of this State will never sanction the repudiation of a lawful debt; but we are here to declare the law, and not to make it.   If any hardship results, we can only deplore what we are unable to remedy.   The Constitution of this State is plenary notice to the world of its organic law.   There can be no *bona fide* holders of unconstitutional obligations, nor can ignorance of public statutes and legislative journals be deemed otherwise than wilful or negligent.   The Journals are published for the information of the public, and are widely distributed and easily accessible, fully as much so as the public records of a county.   Surely no one would be heard to say that he was the *bona fide* owner of a piece of land simply because he held a deed thereto, when an inspection of the records would show that his grantor had no power to convey.

We are frequently reminded of the hardships arising from declaring bonds invalid after they have been sold and paid

for.    We see no way of deciding upon their validity before
the question is presented to us, and this question can be, and
frequently has been, presented and decided before the issuing
of the bonds.    *Charlotte v. Shepherd,* 120 N. C., 411, and
*Commissioners v. DeRossett,* 129 N. C., 275.    If parties
prefer to take the risk of buying the bonds before the determi-
nation as to their legality, they can not complain of the con-
sequences.

The decisions of this Court upon these matters have been
uniform, and were foreshadowed by those upon kindred sub-
jects.

In *State v. Patterson,* 98 N. C., 660, it was held, quoting
the syllabus: "The provisions of the Constitution, in respect
to the forms and methods to be observed by the General As-
sembly in the enactment of laws, are mandatory."

In the opinion, the Court says, on pages 262 and 264:
"The answer to these and like questions must be, that re-
quirements of the Constitution shall prevail and be observed;
and when it prescribes that a particular act or thing shall be
done in a way and manner specified, such direction must be
treated as a command, and an observance of it essential to
the effectiveness of the act or thing to be done.    Such act
can not be complete—such thing is not effectual—until done
in the way and manner so prescribed.    *    *    *

"The purpose of thus prescribing an enacting clause—
'the style of the acts'—is to establish the act—to give it per-
manence, uniformity and certainty—to identify the act of
legislation as of the General Assembly, to afford evidence of
its legislative, statutory nature, and to secure uniformity of
identification, and thus prevent inadvertence, possible mis-
take and fraud.    Such purpose is important of itself, and as
it is of the Constitution, a due observance of it is essential.
The manner of the enactment of a statute is of its substance.
This is so in the nature of the matter, as well as because the

Constitution makes it so." In *Wilkes County Commission-
ers v. Coler,* 180 U. S., 506, 517, the Court, after quoting
from Patterson's case, refers to the subsequent decisions of
this Court, as follows: "After the decision in *State v. Pat-
terson,* rendered as above stated before the bonds in suit were
issued, it might have been anticipated that the same Court
would hold as they did in the subsequent cases above cited,
that the entering of the yea and nay vote on the second and
third readings of an act of the class mentioned in section 14
of Article II of the State Constitution, was a condition prece-
dent that could not be dispensed with under any circum-
stances."

The bonds now in question are dated September 19, 1887;
but it appears from the record that they were not actually
issued until after the determination of the Brown suit, in
1888. Therefore, they were issued after the decision in
Patterson's case, which was determined in 1887. The same
principle was decided in practical effect in *Galloway v. Chat-
ham R. R. Co.,* 63 N. C., 147, determined by this Court at
its January Term, 1869, less than one year after the adoption
of the Constitution. There, an act directing the State Treas-
urer to issue certain bonds of the State to the Chatham Rail-
road Company was declared *void* on the ground that the Gen-
eral Assembly had no power to pass it, without submitting the
subject to a vote of the people. In the opinion of the Court,
delivered by Pearson, C. J., among the constitutional provis-
ions held to be mandatory are expressly mentioned those of
section 14, Article II, as far as they applied to the State,
then the party in interest. If the provisions applying to the
State are mandatory, those in the same section applying to
counties and cities must be equally so. The following is an
extract, beginning on page 152 of the opinion: "In the second
clause, the two exceptions have the effect to make it read,
'Shall have no power to give or lend the credit of the State,

*in any case whatever, except,'* etc., 'unless the subject be submitted to a vote of the people'; so, the intention to restrict the power of the General Assembly in regard to increasing the public debt in any mode or manner, is as strongly expressed as the English language can do it. In matters of construction, the Court is not to confine itself to the particular section; but is to consider the entire instrument, in order to find the general purpose, and the object arrived at.

" 'To maintain the honor and good faith of the State untarnished, the public debt regularly contracted before and since the rebellion shall be regarded as inviolable, and never to be questioned.' Art. I, Sec. 6. 'No law shall be passed to raise money on the credit of the State, directly or indirectly, for the payment of any debt, etc., unless the bill is read three times on three different days, and *unless the yeas and nays on the second and third readings of the bill shall have been entered on the Journal.'* Art. II, Sec. 14. (The italics are ours.) 'The General Assembly shall,' etc., Art. V, Sec. 4. Here, we have a declaration of a purpose to maintain the honor of the State, and pay off the public debt—a rebuke of hasty legislation in reference to raising money and pledging the faith of the State—and an announcement that, although the debt is so large that it can not be paid off for years, yet the interest must be paid promptly, and a sinking fund provided for the discharge of the principle. This purpose could not be effected without putting a stop to the increase of the public debt, by restricting the power of the Legislature." In that case it was not allege that the yeas and nays were not entered upon the Journal, and hence that question was not directly at issue; but the inclusion of section 14, Article II, among the mandatory provisions of the Constitution is a clear intimation of what the Court would have decided had the question been involved.

In *Scarborough v. Robinson,* 81 N. C., 409, the Court, at

the close of its opinion, expressly disclaims any intention of passing upon the effect of Article II, Sec. 14, of the Constitution, as it was not before them. The uniformity, in letter and spirit, of the decisions of this Court through so long a series of years has created a settled rule of law which we deem it our duty to follow.

The judgment of the Court below is modified and affirmed.

Modified and Affirmed.

FURCHES, C. J., dissenting. The purpose of this action is to perpetually enjoin the enforcement and collection of $25,000 in bonds, issued by the township of Murfreesboro, in aid of the construction of a railroad in said township. The action is not only to enjoin the payment of the outstanding bonds and coupons, not yet sued on, but also to enjoin the collection of two judgments recovered in the U. S. Circuit Court for the Eastern District of North Carolina on a part of said coupons, which judgments have not been paid. The judgment of the Court below sustained the prayer of the plaintiff, and granted the injunction, including the judgments of the U. S. Court, as well as the outstanding bonds and coupons. And the opinion of this Court affirms the judgment of the Court below. I dissent from that part of the opinion which enjoins the enforcement and collection of the two judgments mentioned.

This opinion coming in during the last days of the Court, I have not the time to discuss the grounds of my objection, and will have to content myself with a simple statement of the same.

The action presents a rather strange state of facts. A man by the name of Brown, who sued for himself and all other taxpayers (as the present plaintiff does), before the bonds were issued, in which he insisted that the Commissioners had not the right to issue said bonds, and it was so held in the

Court below.   But the Commissioners appealed to this Court (*Brown v. Commissioners,* 100 N. C., 92), and this Court reversed the judgment of the Court below, holding that the Commissioners had the right to issue the bonds, and they were issued.   After they were issued and sold, and the defendants got the money for them, the plaintiff, another taxpayer, brings this action to enjoin their collection, and the defendants demurred to the plaintiff's complaint, and made no defence in this Court by brief or argument.

I do not think the act, intended to authorize the issue of these bonds, was passed according to the constitutional requirement, for the reasons given and the authorities cited in the opinion of the Court; though I do not think the case of *Bank v. Commissioners,* 119 N. C., 214; 34 L. R. A., 487, cited in the opinion of the Court, is authority for that position.   That case came to this Court by appeal, in which a new trial was given the plaintiff; and on the second trial the constitutional question was presented. There had been no final judgment, and the same case was still pending in the same Court.   But there are many other authorities cited in the opinion of the Court which do sustain that position.   Neither do I think the action of Brown, in which it was decided that the Commissioners had the right to issue the bonds, is an estoppel upon the plaintiff in this action, for two reasons: The first is, that the constitutionality of the act of the Legislature, intended to authorize their issue, is not presented and passed upon in that action, and for that reason the plaintiff is not estopped— it is not *res judicala.*   The authorities sustaining this position are collected and cited in the opinion of the Court.   And he is not estopped for the further reason that the facts upon which the judgment of the Court was based, in the case of *Brown v. Commissioners,* were agreed facts, which could only bind the parties agreeing to them.   *Black v. Commissioners,* 129 N. C., 121.   But besides this general rule as to agreed

facts, it was expressly agreed in that case they should not be binding on any one, as follows: "None of the admissions herein contained are in anywise to affect either party, or to be regarded as made, except for the purpose of the submission of this controversy." Taking this special agreement in connection with the general rule that agreed facts shall not constitute an estoppel, I can not doubt the correctness of the view taken in the opinion of the Court that the suit of Brown is not an estoppel.

But as to the judgments of the Circuit Court of the United States (and I place no stress upon the fact that they are judgments of a Federal Court), I differ from the opinion of the Court. The repealing act of the Legislature of 1895, that plaintiff claims abolished the Murfreesboro Township, was pleaded in the Federal Court and expressly passed upon by the following issue and response of the jury: "Has Murfreesboro Township been abolished? Ans.: The corporation has been, but the right to tax the territory exists." And another issue submitted is as follows: "Were the bonds legally issued and delivered? Ans.: Issued prematurely; but it does not affect plaintiff." So it would seem that both these questions have been submitted and passed upon, though the opinion of the Court seems to lay stress upon the fact that neither of these questions had been passed upon. And thereupon it bases an argument in which it is contended that there is no estoppel. The Court contends that because the Act of 1887, upon which the Commissioners undertook to issue these bonds, was unconstitutional for that purpose, it is void for all purposes. I thought it was general learning that this was not so, and it was so expressly held by this Court in the case of *Rodman v. Commissioners*, 122 N. C., 39. There, the Legislature had created a public school district, in which it had provided for levying a special tax to support the school. But, like the act under consideration, the ayes and nays were

not recorded as the Constitution requires they should be, to authorize the levy of the special tax. And this Court held the act was constitutional as to the establishment of the school district, but unconstitutional so far as it undertook to authorize the levy of a special tax to support the school.

But if there was service on the defendants, the Court had jurisdiction both of the defendants and of the subject matter, and the judgments were regular and can not be attacked in this collateral way. *Harrison v. Hargrove,* 120 N. C., 96; 55 Am. St. Rep., 781. In that case, it was held that where the Court found as a fact that service had been made, the judgment could not be collaterally attacked. And in the first action upon which the judgment in the Federal Court was taken, the defendants appeared and put in an answer; and in the others, where the defendants did not appear, the Court found as a fact and adjudged that the defendants had been duly served with process. And, as I understand the Court, the only ground upon which it puts its opinion that the defendants had not been properly served, is, that the Act of 1895 abolished the township. But that question was raised by the answer, submitted to the *jury* by the Court, and found against the defendants, upon which finding judgment was given against the defendants, and they *did not appeal;* and it seems to me that should be the end of that matter.

The three pages of the opinion seem to be devoted to a general discussion of the subject of repudiation. And the Court, before it commences this discussion, says it might close, but so much had been said about the decisions of this Court repudiating obligations, it proceeds to moralize upon the subject of repudiation. But it seems to me that these three pages were really intended as an illumination to enable the Court to escape from the darkness produced by the *moral,* if not legal, repudiation of an honest debt.

I do not concur in the opinion of the Court as to enjoining the judgments mentioned above.

This was written as a dissenting opinion to the opinion of the Court as it was originally written.

CLARK, J., dissenting in part.   Chapter 365, Laws 1887, authorized Murfreesboro Township to subscribe $25,000 to the Murfreesboro Railroad Company, and provided for. an election to be held in said township for submitting the question of subscription to the voters therein.   The election was regularly held and the subscription being adjudged carried, the bonds were issued.   A tax having been levied to pay interest on said bonds, this action is brought by a tax-payer of said township to restrain the collection thereof on the ground that the act of the Legislature was not passed in the mode required by Article II, Sec. 14, of the Constitution.   The plaintiff in his brief admits that the bill was properly passed in the Senate, but contends that there is a defect in the second and third reading in the House, in that the nays were not entered, and it does not appear that there were no nays.   That this must affirmatively appear is true, for the constitutional requirement is mandatory.   *Smathers v. Commissioners,* 125 N. C., at page 486; *Commissioners v. DeRossett,* 129 N. C., 279.

There being some doubt as to the accuracy of the printed journals, a certified transcript of the passage of this act from the manuscript journals, has been made a part of the record, from which it appears as follows:

"House Journal, 41st day.

"H. B. 948.   Passes its second reading, ayes 70" (names being entered) ; "noes, none."

"House Journal, 46th day.

"H. B. 948. Passed third reading by following vote: Ayes, 94" (giving names) "nays, . . . ."

The expression, "Passes by the *following vote,* ayes 94" (giving names) ; "nays, . . . .," is as express and intelligent a declaration that there were no negative votes as·if the word "none" had been used.

"Nays, . . . .," after the words, "passes by following vote," and giving those voting aye, can convey no other meaning. Is it not hypercritical to say that "nays, . . . ." did not mean that there were no names in the negative.

The Constitution requires that the "ayes and "noes" shall be entered on the journal, and it can not be seen that this requirement has been complied with when it does not affirmatively appear that there were no "noes," but that fact does sufficiently and clearly appear from above transcript of the journal of the House. It is but just to the plaintiff to say that when he brought this action and filed his complaint, he had only before him the printed journals, which omit the words (on the third reading in the House) "nays, . . . .," which do appear in the manuscript journal.

The plaintiff further contends, however, that the bill was not legally passed, in that the third reading in the House and the first reading in the Senate were on the same day. The journals show that the third reading in the House was on the 46th day in that House, and that the first reading in the Senate was on the 47th day of the session of that body, but the plaintiff contends that these were in fact the same day, 28th February, 1887. This would seem a contradiction in the record, but taking the plaintiff's contention to be true, this does not invalidate the passage of the bill. The Constitution, Art. II, Sec. 14, provides that such acts are invalid "unless the bill for the purpose shall have been read three several times in each House of the General Assembly, and passed three several readings, *which readings* shall have been

*on three different days* and agreed to by each House respectively, and unless the yeas and nays on the second and third reading of the bill shall have been entered on the journal."

These requirements seem to have been complied with in every particular. There is no requirement that the bill shall be read on six different days. The requirement is "passed three several readings, which readings shall have been on three different days," in each House. There is this requirement for care and deliberation in each House, but there is no prohibition that the first reading in the second House may not be on the same day as the third reading in the House in which it first passed. Such expedition is unusual, but the bill, being a new matter in the second House, an interval after its passage on its last reading in the other House before its introduction and first reading in the second House, can not add to the deliberation and thought to be given its passage in the latter body. The Courts can not dispense with any requirement of the Constitution, but neither can they add any requirement not therein imposed. There were other points presented on the appeal, but in the view which I take of the validity of the passage of the act they are altogether immaterial and need not be considered.