GEORGE H. SMATHERS, Receiver of Western Carolina Bank, *et al.*
v. COMMISSIONERS OF MADISON COUNTY.

(Decided December 19, 1899.)

*County Bonds—Funding Debts for Necessary Expenses—*
*Special Tax—The Constitution, Art V, Sec. 6, and Art.*
*II, Sec. 14—Mandamus.*

1. Where the limit prescribed by the Constitution for the levy of
   taxes by the Commissioners for general county purposes is
   reached, Art. V., sec. 6, and it becomes necessary to invoke
   the aid of the Legislature to authorize them to levy special
   taxes to meet the payment of county bonds and interest, the
   requirements of Art. II, sec. 14, must be strictly complied
   with, as the whole of them are mandatory.
2. The usual certificate of ratification is conclusive only of the fact
   of ratification, but not of a compliance with Art. II, sec. 14,
   of the Constitution.

CIVIL ACTION for judgment and mandamus to enforce col-
lection of interest on certain Madison County bonds, held by
the plaintiff as receiver of Western Carolina Bank. The
defense was (1) That the bonds were invalid, being issued
without legislative authority for the purpose of funding out-
standing county indebtedness; (2) That the constitutional
limit of taxation had already been reached by the Commis-
sioners; (3) That the legislative Act of 1887, chap. 398,
authorizing the Commissioners to issue these bonds to pay
the outstanding indebtedness, had not been passed in conform-
ity to the requirements of the Constitution, Art. II, sec. 14;
(4) That the bonds had not been sold for cash, as required by
the act; but were exchanged at par for county indebtedness.

The cause was moved from Madison County to TRANSYL-
VANIA County for trial, and was tried by *Coble, J.,* at Septem-

ber Term, 1899, of the Superior Court, upon an agreed state-
ment of facts.

His Honor rendered judgment for the debt, and the defend-
ants appealed.

The facts and circumstances of the case are fully stated by
Mr. Justice MONTGOMERY, who writes the opinion in both
appeals.

FAIRCLOTH, C. J., dissenting.

*Mr. George H. Smathers*, for appellant.
*Mr. J. M. Gudger, Jr.*, for appellee.

MONTGOMERY, J.    This action was brought to recover of
the defendants certain amounts of money due to the plaintiff
Smathers, receiver of the Western Carolina Bank, as interest
on certain bonds issued by the Commissioners of Madison
County, and to compel by mandamus the Commissioners to
levy a special tax to pay the interest as well as to create a
sinking fund to pay the principal of the bonds when they
shall become due.    It is not a controversy submitted without
action, under sec. 567 of The Code, but, after the pleadings
were filed, the plaintiff and defendants agreed upon the facts
and submitted the same to the Court for its judgment.    The
facts are substantially as follows:    The county of Madison
was indebted to various persons, the consideration of the
indebtedness being the necessary expenses of the county
already incurred, and, being unable to pay the same and
at the same time to conduct the ordinary business affairs of
the county with its resources obtainable through the taxes
levied up to the full constitutional limitation, procured
through its Board of Commissioners the enactment of a law
by the General Assembly on the 17th of March, 1887, (Pub-
lic Laws of 1887, chap. 398), authorizing the Commissioners

125——31

to issue coupon bonds and to sell the same to pay the outstand-
ing indebtedness of the county incurred for necessary
expenses, and to levy a special tax to meet the interest on the
bonds and also to create a sinking fund to pay the bonds at
maturity.    The Commissioners issued bonds for that purpose,
under the act, to the amount of $21,000, in denominations of
$1,000 and $500 each, payable in 20 years, and bearing
interest at 6 per cent, and payable on the first days of
December and June of each year.    The bonds were not sold
for cash by the treasurer of the county, as was required by the
act, but they were, at their face value, exchanged for the out-
standing indebtedness of the county as provided for under the
act, no interest being charged on either side from the date of
the issue to the exchange of the same for the county indebt-
edness.    The proper authorities of the county have levied a
special tax each year, including 1896, to meet the interest on
the bonds, and, for the years 1897 and 1898, to create the
sinking fund besides; and the interest due to the plaintiff
bank, up to and including the interest for the 1st of December,
1895, has been paid and nothing since has been paid except
$495, in the year 1897, and the balance of the interest due, as
stated in the complaint, is due and unpaid.    The Commis-
sioners have declined to order any part of the fund arising
from the special tax levy of 1898 to be paid to the plaintiff
as interest on the bonds which he holds, or to create a sink-
ing fund for the payment of the bonds, and they declined on
the first Monday in June, 1899, to levy any tax for the pur-
poses required by the act, on the ground that the act authoriz-
ing the issue of the bonds and the levying of the special tax
therein provided for was not passed by the General Assembly
in accordance with the requirements of Art. II, sec. 14, of the
Constitution of the State.    The Commissioners of the county
at their annual meetings on the first Mondays of June, 1898,

SMATHERS *v.* COMMISSIONERS.

and 1899, levied a tax for general county purposes up to the constitutional limitation, and that the whole was necessary to meet the current expenses of the county.   The plaintiff bank was not the original purchaser of the bonds now held by the plaintiff, Smathers, its receiver, but bought them in open market, in 1889, and paid 90 cents on the dollar for them, and the bank had no actual notice of any irregularity in the issue and sale of the bonds.   From the Senate and House Journals of the session of 1887, it appears that the "yeas" on the second reading of the bill were entered on the House Journal, but it was not stated that there were no "nays," and that in the Senate the first and second readings of the bill took place on the same day.

Upon the facts, the judgment of the Court was asked as follows, (in the language of the counsel of both the plaintiff and the defendant) :

1.  As to the validity of the said bonds.

2.  As to the validity and constitutionality of the tax levy provided for in the said Act of 1887.

3.  If said bonds are valid, then are the Western Carolina Bank, and Geo. H. Smathers, receiver thereof, or either of them, entitled to a writ of mandamus from the Court to compel the Board of Commissioners of said county of Madison to meet in extra session, and levy the special tax provided for in the said act of 1887, to meet the interest on said bonds, and create a sinking fund, provided for in said act, for the year commencing June 1, 1899 ; and if said Board can not by law be required to meet in extra session to levy said special tax on that date, then can said Board of Commissioners be required to meet on the first Monday in June, 1900, to levy said special tax, as well also as the tax to be levied on that date, to meet the interest on said bonds, and create the sinking fund, as provided for in said act of 1887, for the year commencing the first day of June, 1900 ?

4. As to what judgment, if any, the plaintiffs are entitled to against the defendant Board of Commissioners, for the interest due to plaintiffs on said bonds, so held by Geo. H. Smathers, receiver aforesaid, but the judgment of the Court is not asked as to any other question raised by the pleadings.

The Court rendered a judgment in the following words: "And the Court being of opinion that the said bonds are valid, having been made and exchanged for claims of indebtedness created for the necessary expenses of the county, and the said special-tax levy attempted to be authorized by the said Act of 1887 is invalid and unconstitutional, since the said act was not passed according to the requirement of Art. II, sec. 14, of the Constitution of North Carolina, as appears from the facts above set out.

"It is therefore considered and adjudged that the plaintiffs do recover judgment against the defendant Board of Commissioners of said county for the balance of the interest accrued and due for the years 1896, 1897 and 1898, and up to June 20, 1899, the beginning of this action, on said bonds, to-wit; three thousand and seven dollars ($3,007), and the costs of this action to be taxed by the Clerk.

"It is further considered and adjudged that the plaintiff is not entitled to a writ of mandamus as prayed for to compel the said defendant Board to levy the said special tax."

Both parties appealed from the judgment of the Court. The plaintiff's appeal was only from that part of the judgment in which the Court refused to grant the writ of mandamus prayed for in the complaint. The error assigned was that, as the indebtedness of the county was for necessary expenses, his Honor should not have held that it was necessary that the bill authorizing the issue of the bonds and the levying of the special tax should have been passed in compliance with sec. 14, Art. II of the Constitution, to make them valid, and that

he should have ruled, if that section of the Constitution had any bearing on the manner in which the particular act should have been passed, that all that was mandatory in that section had been complied with.

We will now discuss the position of the plaintiff. It appears from the facts agreed that for the years 1898 and 1899, the levy of taxes by the Commissioners for general county purposes was up to the limit prescribed by the Constitution, and it must be inferred from the fact that legislative aid was invoked in 1887 to enable the Commissioners to settle the outstanding indebtedness of the county that the indebtedness could not be paid with the taxes levied and collected up to the constitutional limit, although the record is silent on this point. It became necessary, therefore, for the Commissioners, in 1887, to invoke the aid of the Legislature to authorize them to levy special taxes to meet the payment of the bonds and the interest, for in Art. V, sec. 6, of the Constitution, it is ordained that "the taxes levied by the Commissioners of the several counties for county purposes shall be levied in like manner with the State taxes, and shall never exceed the double of the State tax, except for a special purpose, and with the special approval of the General Assembly." *McCless v. Meekins,* 117 N. C., 34; *Tate v. Commissioners,* 122 N. C., 812. The Commissioners for several years thought they had the power to issue the bonds and to levy the taxes for their payment under the act which we have been discussing, and the only question presented by the plaintiff's appeal is whether it was necessary that that act should have been passed according to the requirement of sec. 14, Art. II of the Constitution?

The contention of the plaintiff is that all of that section of the Constitution which is mandatory is embraced in the words "and unless the yeas and nays on the second and third read-

ings of the bill shall have been entered on the Journal," and that that requirement was complied with. The argument of Mr. Smathers was able and exhaustive. In support of his position he cited the case of *Carr v. Coke,* 116 N. C., 223, and insisted that, by that decision, the certificate of ratification of the act by the Speakers was a presumption conclusive and irrebutible, that the bill had been read three times in both Houses, and that that conclusive presumption, together with the fact that the yeas and nays in both Houses had been entered on the Journals, made a full compliance with the constitutional requirement. The counsel was mistaken, however, in believing that the *nays* were entered on the Journal of the House upon the second reading. The record shows that the yeas were entered, but does not show that there were no nays. But even if that had been the case, the decisions of this Court are to the effect that the whole of sec. 14, Art.II, is mandatory. *Bank v. Commissioners,* 119 N. C., 214; *Commissioners v. Snuggs,* 121 N. C., 394; *Commissioners v. Call,* 123 N. C., 308; *City of Charlotte v. Shepard,* 122 N. C., 602. In *Commissioners v. Snuggs, supra,* at p. 399, the Court said: "But in that class of legislation, the purpose of which is to legislate under sec. 14 of Art. II of the Constitution, a literal compliance with the language of that section is a condition precedent, and one which must be performed in its entirety before the bill can become a law." In *Bank v. Commissioners, supra,* the Court said: "This case has no analogy with *Carr v. Coke.* That merely holds that when an act is certified to by the Speakers as having been ratified, it is conclusive of the fact that it was read three several times in each House and ratified. Const. Art. II, sec. 23. And so it is here; the certificate of the Speaker is conclusive that this act passed three several readings in each House, and was ratified. The certificate goes no further. It does not certify that this

SMATHERS v. COMMISSIONERS.

act was read three several days in each House, and that the
yeas and nays were entered on the Journals.   The people had
the power to protect themselves by requiring in the organic
law something further as to acts authorizing the creation of
bonded indebtedness by the State and its counties, cities and
towns, and the fact certified to by the Speakers of three read-
ings in each House and ratification.

There was no error in the ruling of his Honor in the court
below, nor in the judgment, and the same is

Affirmed.

FAIRCLOTH, C. J., dissents.

_____

DEFENDANTS' APPEAL.

Where bonds are issued to secure the outstanding debt of
the county, incurred for its necessary expenses, they consti-
tute a valid debt against the county.

MONTGOMERY, J.   His Honor held that, as the considera-
tion upon which the bonds were issued was the indebtedness
of the county, incurred for its necessary expenses, the bonds
constituted a legal and valid debt against the county.   The
defendants excepted, and appealed from this ruling and judg-
ment.   The ruling was correct.   Legislative aid was not nec-
essary to enable the County Commissioners to bond such
indebtedness.   As far back as 1876 this Court held, in
Tucker v. City of Raleigh, 75 N. C., 267, that it was not nec-
essary, in order that a municipal corporation might create a
debt for necessaries, that a popular vote should be required
therefor, and that when such a debt had been created, the
authority to contract implies that the municipality had the
power to furnish to the creditor proper evidence of the debt—
evidence by its bond.   The same point precisely was decided

in like manner in *McCless v. Meekins,* 117 N. C., 34. Such being the law, it follows as a matter of course that, whenever there is a municipal debt incurred for necessary municipal expenses, it becomes the duty of the proper municipal authorities to levy a special tax to pay it without seeking the aid of legislative authority if such special tax, together with the other regular taxes, should not exceed the constitutional limitation. Nor is it necessary in cases where the Legislature authorizes a county or city or town to levy a special tax to pay a debt created for the necessary expenses of the county, city or town, to submit the matter to a popular vote. *McCless v. Meekins,* and *Tate v. Commissioners, supra; Herring v. Dixon,* 122 N. C., 420. In the last-named case, the decisions on this point are summed up as follows:

"1. For necessary expenses, the County Commissioners may levy up to the constitutional limitation without a vote of the people or legislative permission.

"2. For necessary expenses the County Commissioners may exceed the constitutional limitation by special legislative authority without a vote of the people. Constitution, Art. V, sec. 6.

"3. For other purposes than necessary expenses, a tax can not be levied either within or in excess of the constitutional limitation except by a vote of the people under special legislative authority. Constitution, Art. VII, sec. 7."

No error.

FAIRCLOTH, C. J., dissents.