B. G. LASSETER, *Appellant,* v. STATE OF FLORIDA, *ex rel.,*
W. A. HALLOWES, JR., STATE'S ATTORNEY, AND CITY OF
JACKSONVILLE, A MUNICIPAL CORPORATION IN DUVAL
COUNTY, FLORIDA, *Appellees.*

## Opinion Filed March 17, 1914.

1. When the Governor actually calls the Legislature together
   under Section 8, Article IV, and Section 2, Article III of the
   Constitution of 1885, it is immaterial what he may have
   thought of his action.

2. Where the Journals of the House of Representatives show
   that on the final passage of a bill a large majority of the
   House voted for it, but six members were not accounted for
   as voting aye or no, it is not essential to a compliance with
   the constitutional provision, section 17, Article III, that the
   Journal should show the six members not accounted for
   either refused to vote, or voted in the negative, or that there
   were no negative votes.

3. Chapter 6237, Law of 1911, is not unconstitutional and void
   because in the 3rd Section it confines the right of interven-
   tion in a proceeding brought to validate the bonds issued under
   the authority of the act, to citizens of Florida who may be
   residents in the county or municipality desiring to issue the
   bonds. This question under Section 8, Article VIII of the
   Constitution is within the control of the Legislature.

4. Under the authority conferred upon the Mayor and City
   Council of Jacksonville by Sections 3 and 9 of Chapter 6415,
   they had authority to change the language of the bonds and
   coupons as to the place of payment in New York, and in lieu
   thereof insert the following: "The United States Mortgage
   and Trust Company in the City of New York."

5. The fact that the bonds which are involved in this validating
   proceeding are made to bear interest from March 1st, 1913,
   does not render ineffectual the decree of validation dated
   24th of June, 1913.

6. The fact that the coupons of the bonds issued in this case are made acceptable for taxes or other dues to the City of Jacksonville, does not authorize the city to issue bills of credit or currency, nor does this provision create an unlawful discrimination between classes of individuals holding bonds and those not holding them.

7. Where a Board of Election Commissioners whose duty it was to canvass an election, consisted of three members, and two of them met, pursuant to statutory notice, and proceeded to canvass the returns of the election and signed the certificate showing the result of the election, the two Commissioners thus acting constituted a quorum for transacting business, and their certificate was legal.

8. It is not a fatal objection to the canvass of a vote by Election Commissioners, under Chapter 6415 Laws of 1912, that it was made from the returns in the office of the City Recorder and not from the returns filed with the Chairman of the Board of Election Commissioners, inasmuch as the said returns were in duplicate, and both of equal dignity, authority and probative force.

9. Chapter 6237 Laws of 1911, is broad enough in its terms to apply not only to then existing laws, but also covers proceedings brought under subsequent statutes, and the title of the act fairly indicates the nature of the act, and the true effect of the same.

10. There is no conflict between sections 3 and 9 of Chapter 6415 Laws of 1912, because, construing the two sections together, the gold coin mentioned in Section 9 is the kind of gold coin described in Section 3, *i. e.*, gold coin of the United States of the present standard of weight and fineness.

Appealed from Circuit Court for Duval County; Daniel A. Simmons, Judge.

Decree affirmed.

16—Vol. 67.

*J. C. Cooper & Son, E. J. L'Engle* and *Powell & Pelot*, for Appellant;

*W. A. Hallowes, Jr., P. H. Odom* and *C. D. Rinehart*, for Appellee.

HOCKER, J.—On the 19th of May, 1913, W, A. Hallowes, as State Attorney of the Fourth Judicial Circuit, under the authority conferred on him by Section One (1), Chapter 6237 Laws of 1911, filed a petition in the Circuit Court for a decree validating certain bonds described in the decree copied below. On June 2nd, 1913, B. G. Lasseter, on his own petition, alleging his citizenship and ownership of property in Jacksonville, was allowed to intervene in said cause. He filed an answer and demurrer to the petition of State Attorney Hallowes. Some testimony was taken before the Judge. On June 24th, 1913, a final hearing was had and a decree was entered, which is as follows:

"In the Circuit Court of Duval County, Fla., The State of Florida, *ex rel.* W. A. Hallowes, Jr., State's Attorney, *Petitioner,* v. City of Jacksonville, a Municipal Corporation in Duval County, Florida, B. G. Lasseter, Intervener-Defendant, *Defendant.*

Action to validate and confirm City of Jacksonville Dock and Terminal Bonds to be issued under Chapter 6415, Laws of Florida.

*Decree Validating and Confirming Jacksonville Dock and Terminal Bonds.*

This cause coming on to be heard on the original petition, the sworn answer thereto filed by the said City of

Jacksonville, the demurrer and answer to said petition, filed by B. G. Lasseter, Intervenor, and the testimony taken before the court, and the same having been argued and submitted for final hearing by the respective parties hereto, upon consideration thereof, it is ordered, adjudged and decreed that the eqquties in said cause are with the petitioner and the prayer of the petition is hereby granted; that the said City of Jacksonville Dock and Terminal Bonds are hereby validated and confirmed, and when said bonds are duly issued, sold and delivered the same shall be valid and legal obligations against the said City of Jacksonville, and this decree shall be forever conclusive upon the validity of said bonds against the said city, and the validity thereof shall never be called in question in any court in this State.

Done and Ordered this 24th day of June, A. D., 1913.

Daniel A. Simmons, Judge."

On the 23rd of December, 1913, B. G. Lasseter entered his appeal from this decree.

The first six assignments of error are abandoned.

The seventh assignment is as follows: "Said Circuit Court erred in making and entering its order and decree of June 24th, 1913, validating and confirming said City of Jacksonville Dock and Terminal Bonds." This general assignment only raises the question of the merits of the decree. Assignments of error ought to be specific. Newberry v. State, 26 Fla. 334, 8 South. Rep. 445; Hodge v. State, 26 Fla. 11, 7 South. Rep. 593; 2 Ency. Pl. & Pr. 954. Under this assignment the appellant presents divers grounds based on rulings on demurrers to the petition. The third ground takes exception to the manner in which the Legislature of 1912 was called in session by the Governor. It is alleged the journals show

affirmatively the Governor did not believe it necessary to call the extra session.   The Journals also show he did call it together, and what he may have thought of his act, is immaterial under Section 8, Article IV, and Section 2, Article III, Constituion of 1885.   Farrelly v. Cole, 60 Kan. 356, 56 Pac. Rep. 492, 44 L. R. A. 464.

The next question presented by the brief is that Chapter 6415 Laws of 1912 was not passed in conformity with the requirements, nor in the manner prescribed by Section 17 of the Constitution of Florida as amended in this, that the yeas and nays were not entered in the Journal of the House of Representatives upon the vote on the final passage of said act, as required by said section as amended, but only the affirmative votes, and it is not stated or shown by said Journal how the members of said House, other than those who voted *affirmatively* voted upon the final passage of said act; and, in connection with this question, is another, *viz.*: that the yeas and nays were not entered in the Journals of the House as required by this section of the Constitution.   It is admitted by appellant in his brief that the Journal in question shows affirmatively that Senate Bill No. 3 (the bill in question), on its final passage received 65 affirmative votes in the House on its final passage from members properly named in the Journals, who at the time the vote was cast constituted a clear majority of all its members, and a legal and sufficient quorum of said House of Representatives.   But it is contended that before the regular passage of the bill can be claimed that the Journal of the House should show in addition that the six members not accounted for on the final vote, either refused to vote or voted in the negative, and that in the event there were no negative votes, this fact must affirmatively appear as a part of the Journal entry, and the Journal failing to

show this information, Chapter 6415 (Senate Bill No. 3) of the Acts of 1912, is for the reason stated, inoperative and void. On pages 51 and 52 of the Journal of the House it is seen that 65 members voted *yea,* and does not show that the other six members voted nay, or that they declined to vote. State *ex rel.* Markens v. Brown, 20 Fla. 407, is cited by appellant. The facts in that case are unlike those in the instant case, but appellant copies from the opinion in the case a quotation from Cooley's Constitutional Limitations to the effect that it will not be presumed from the mere silence of the Journals that either House has exceeded its authority, or disregarded a constitutional requirement in the passage of a Legislative Act, unless where the Constitution has expressly required the Journals to show the action taken, as for instance where it requires the yeas and nays to be entered. Of course this can only apply to cases where there are yeas and nays to be entered. The Constitution, Section 17, Article III, does not in terms require the fact to be entered that there are no yeas, or no nays on the final passage of a bill. It seems to require only that the yeas and nays shall be entered in the Journal. If there are neither of these, there is nothing to enter. The Journal does not show there were any nays, and we cannot infer it. Several other Florida cases are cited, but the facts are different from this case. There were not more than 71 members in the House, and 65 voted for the law—which was more than a sufficient majority to pass it.

In the case of Steckert v. City of East Saginaw, 22 Mich. 104, Judge Cooley wrote the opinion of the court. He is dealing with the Charter of the City of East Saginaw, which requires that the vote of a City Council in certain cases, shall *be entered at large on its minutes.*

He decides that the record of a vote that it was adopted "unanimously on call, the names of those voting no, otherwise *not appearing* than by the statement of those present at the opening of the session is not a compliance with the statute. He asserts that "neither the spirit nor the purpose of the Act can be satisfied with entries on the minutes showing who voted on each resolution embraced within the terms of the Act and how the vote of each was cast, in other words the ayes and nays on each resolution must be entered at large on the minutes." Among other arguments used by him in support of his views is the following: "What is designed by this statute, is to fix upon each member who takes part in the proceedings on these resolutions, the precise share of responsibility which he ought to bear, and that by such an unequivocal record that he shall never be able to deny either his participation or the character of his vote. But manifestly we cannot determine in the present case with any certainty that any one of the aldermen named—Alderman Buckhout, for example—actually voted for the resolutions in question. We know he was present when the council convened, but we have no record which points specifically to his individual action afterwards. Suppose he were to contest the tax as illegal, and the city authorities were to insist upon an equitable estoppel arising upon his vote in its favor, and he should deny such vote, we should look in vain in this record for anything absolutely inconsistent with such denial. Suppose his constituents, dissatisfied with his vote, undertook to call him to account for his participation, and he were to say to them, 'I was not present when these resolutions were adopted; I was indeed present when the council convened, but was called away soon after on private business;' this record plainly could not be relied upon to

contradict his assertion. The persons arraigning him would be obliged, in order to fix his responsibility, to resort to the parol evidence of his associates or of by-standers. But the Legislature understood very well the unsatisfactory character of that kind of evidence, and they did not intend that the power to call an alderman to account for misconduct, delinquencies, or errors of judgment in the performance of this official duty, should be left to depend upon it. They have imperatively required that there should be record evidence of a character that should not be open to contradiction, or subject to dispute; and their requirement cannot be complied with according to its terms, nor satisfied in its spirit and purpose, without entries in the minutes showing who voted on each resolution embraced by the section quoted from the charter, and how the vote of each was cast. In other words, the ayes and noes on each resolution must be entered at large on the minutes, so that the presence or participation of any member shall not be left to conjecture or inference." It is evident that Judge Cooley is dealing with a proceeding to levy a tax by the City of East Saginaw, and not with an Act of the Legislature. Then again he is dealing with a proceeding adopted by a unanimous vote which does not give the vote of any single member of the City Council, and fixes no responsibility upon any member as to how he voted. In the instant case the Journal of the Legislature affirmatively shows that 65 members of the Legislature by name voted for the Act which is attacked. It may be that even so great a legal mind as Judge Cooley might find it difficult to lay down a rule of construction in considering a city ordinance which would be applicable to all possible conditions which might arise under the provision of the Constitution we are considering.

In the case of Smithee v. Garth, 33 Ark. 17, the Supreme Court of Arkansas applied Judge Cooley's views in a case where there was a constitutional provision similar to ours, and where the vote on the final passage of a bill was affirmative; 47 yeas, nays 24; not voting 11. The court says in its opinion: "The Constitution says the *yeas and nays* shall be entered on the journal; and we have no right to say that this need not to be done. or that half compliance is sufficient.

It is not sufficient to enter the *yeas* and omit the *nays*, nor to enter the *nays* and omit the *yeas,* and in all cases the names of those voting in the affirmative and negative must necessarily be entered on the journal."

In considering this case we find it difficult to understand how the 11 members *not voting* are to be considered as having voted either yea or nay. If they refused to vote, what authority did the Clerk, or the House itself, have to record them as voting "yea or nay?" If this construction is correct, one single member who refused to vote could defeat the passage of any Act, and possess a veto over legislation. We do not think this construction should be placed on our Constitution. Certainly every member of the Legislature ought to vote aye or no on the final passage of a bill, but we hesitate to put a construction on the Constitution which seems to lead to an absurdity, and give a single contumacious member of the Legislature the power to defeat all legislation by simply refusing to vote aye or no on the final passage of a bill; so that although he may be present he cannot be recorded as voting aye or no. A majority vote of the members present is all that is required by the Constitution to pass every bill or joint resolution (Sec. 17 of Art. III of the Constitution as amended).

The Constitution of North Carolina seems to be like

ours in requiring the aye and nay vote on the final passage of a bill to be entered on the journal. The Supreme Court of that State in several cases holds that if there are no nays, that fact should be affirmatively stated; and yet the Constitution only requires the aye and nay vote; yet the court argues from this that "of course if there were no nays, that fact should be affirmatively stated." This is simply an inference of the court. The Constitution does not expressly require it. See Smathers v. Commissioners of Madison County, 125 N. C. 480, 34 S. E. Rep. 554; Commissioners of New Hanover County v. DeRosset, 129 N. C. 275, 40 S. E. Rep. 43; Debnam v. Chitty, 131 N. C. 657, 43 S. E. Rep. 3. It is upon this inference that the statutes they were considering were held unconstitutional.

In the case of Board of Commissioners of Onslow County v. Tollman, 76 C. C. A. 317, 145 Fed. Rep. 753, this question was very thoroughly considered by Judge McDowell. The opinion in this case is so clear and logical, it is well worth reading. He starts his reasoning with the maxim *"omnia praesumuntur"*—the officers of the Legislature are presumed to have done their duty in the absence of proof to the contrary. He cites several cases decided by the Supreme Court of the United States to the effect that an Act of the Legislature can only be held unconstitutional in cases *entirely free from doubt.* Chief Justice Marshall in Fletcher v. Peck, 6 Cranch 87, held that "it is not on slight implication and vague conjecture that the Legislature is to be pronounced to have transcended its powers and its act to be considered void." Judge McDowell, among other things, says: "The Constitution in the words selected by its authors requires the entry of votes. In entering on the journal 'nay votes none,' the Clerk is undeniably not entering *nay* votes.

As the Constitution is silent concerning nay votes in cases where the only votes cast are yeas, we think the proper, if not the necessary implication is that no entry concerning the non-existent nay votes is required."

The more recent case of Board of Commissioners of Town of Salem v. Wachovia Loan & Trust Co., 143 N. C. 110, 75 S. E. Rep. 442, held: "The entries upon the Senate Journal give the names of a large majority of the total membership of that body as voting for the passage of this bill upon the second and third readings, so that there can be no question of its passage by a constitutional majority. But the entries indicate further that the bill passed by a unanimous vote and that there were no names to be recorded as voting in the negative." The entry in the journal which is referred to is as follows: "Senate Journal, Senate Chamber, January 23, 1891. The bill passed its second reading. Ayes 39, noes——, as follows: Then follows a list of those voting in the affirmative, without any reference to those voting in the negative. The bill passed its third reading. Ayes 34, noes——, as follows. Then follows a list of those voting in the affirmative, with no further reference to those voting in the negative." The court cites approvingly the case of Board of Commissioners of Onslow County v. Tollman, 76 C. C. A. 317, 145 Fed. Rep. 753, and overrules the case of Dabnam v. Chitty, 131 N. C. 657, 43 S. E. Rep. 3. We think it does not appear from the Journal that on the final passage of the bill which became Chapter 6415, the requirements of Section 17, of Article III of the Constitution as amended were not complied with as to entering the vote in the Journal; but on the contrary under the circumstances proper entries of the votes were made, which show that the Act was constitutionally passed

The next ground of the demurrer to the petition which

is argued, is that Chapter 6237, Laws of 1911, under authority of which the petition was filed, is unconstitutional and void because that in the third section thereof it confines the right of intervention to citizens of the State of Florida—who may be residents in the county or municipality desiring to issue bonds, all other taxpayers and property owners are excluded from any right to contest the validity of the bonds sought to be issued. No authority is cited as sustaining this contention, and we know of none. Under Section 8, Article VIII of the Constitution of 1885, the Legislature might have authorized the City of Jacksonville to sell bonds for municipal purposes without the sanction of its citizens or taxpayers expressed in an election. Middleton v. City of St. Augustine, 42 Fla. 287, 29 South. Rep. 421. Under Section 8, Article VIII of the Constitution this whole question was under the control of the Legislature, and we can discover in the Act no interference with the vested rights of any one. See City of Miami v. Romfh, 63 South. Rep. 440.

The next contention is that the bonds provided for in the 9th Section of Chapter 6415 are void for uncertainty of place of payment in New York, and that the bonds which are sought to be validated are not authorized by law, inasmuch as the City Council of Jacksonville by the enactment of Ordinance L 159, undertook to supply a definite place for payment of the principal and interest of the bonds and designated the United States Mortgage and Trust Company of the City of New York as the bank in the said city where such payments are to be made. The bonds sought to be validated are in the form provided by the 9th Section of the Act of the Legislature, except that the place of payment is as provided by the ordinance. The contention is that the City Council could not *by*

ordinance change the form of the bond provided in the Act. The Act in Section 9 states that the bonds and coupons attached shall be in the following words and figures, and in the form of the bond it is provided that the City of Jacksonville in the State of Florida will pay to    *    *    *    the bearer the sum of One Thousand Dollars ($1,000.00) in gold coin of the United States at the office of the City Treasurer of the City of Jacksonville, or at a bank in the City of New York designated by the City of Jacksonville, with interest thereon, etc.

Ordinance No. L. 159, Bill No. L. 241, recites that the Board of Port Commissioners of the City of Jacksonville had passed a resolution designating the United States Mortgage and Trust Company of the City of New York as the bank in said city for the place of payment of the principal and interest of the City of Jacksonville Dock and Terminal Bonds, issue of 1913, and recommended that the form of the bonds and coupons as prescribed in Section 9 of Chapter 6415 of the Laws of Florida, approved October 3, 1912, be amended as follows: after the words "at the office of the City Treasurer in the City of Jacksonville, or at" strike out the words "a bank in the City of New York designated by the City of Jacksonville," and in lieu thereof insert the following: "The United States Mortgage and Trust Company in the City of New York which is designated by the City of Jacksonville as the place of payment," and that said changes be made wherein the context requires. The ordinance recites that the City Council has been requested by said Board to pass an ordinance designating a bank in the City of New York for the payment of principal and interest on said bonds and making the above change, therefore be it ordained by the Mayor and City Council of the City of Jacksonville, Section 1. Without copying it,

it is sufficient to state that the ordinance made the requested changes in the form of the bond. Considering the powers conferred by Sections 3 and 9 of the Act, the City had the authority to designate the bank in New York where the payments were to be made, and did not exceed their authority in making the change referred to in the form of the bond to carry out the purpose of the Act. We do not think the facts in the case of Middleton v. City of St. Augustine, *supra,* are similar to those in the instant case, and the decision is therefore not applicable.

The next contention is that the validation of the bonds should have been completed prior to March 1st, 1913, the date from which the bonds will bear interest, and as of which the bonds must be executed. It is contended that because of the form of the bond this language occurs: "In testimony whereof the City of Jacksonville has *issued* this bond bearing date 1st March A. D., 1913," the validation should have been completed before that date; and since that was not done, the decree entered June 24th, 1913, validating the bonds was unavailing. It is perfectly evident from the context that the word "issued" simply indicated one step in the preparation of the bonds for delivery, and does not exclude the idea that some other step might not also be taken. Botter v. Lainhart, 44 Fla. 647, text 673, 33 South. Rep. 251. The date March 1st, 1913, indicates the date of execution from which the bond is to bear interest. We do not think that the terms of the Act exclude the power of validation after March 1st, 1913. The petition to validate was filed by the State Attorney as soon as he was officially informed of the election.

The next contention is that "the coupons of the bonds are attempted to be made acceptable for taxes or other

dues to the City of Jacksonville." It is contended on the one hand that this provision is equivalent to an attempt to authorize the City of Jacksonville to issue bills of credit or currency, and on the other that it creates an unlawful, unjust and unconstitutional discrimination between classes of individuals who may be so fortunate as to possess some of these bonds, if they are ever issued, and that class who are not so fortunate, in the payment of taxes and dues to the City of Jacksonville. This question was settled adversely to the contention of the appellant in the Virginia Coupon Cases. See Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. Rep. 903, 962. No authorities are cited by appellant.

The next contention is that the petition and contents of the exhibits fail to show that the Board of Election Commissioners ever met, canvassed, declared or certified the results of the election upon the question of issuing bonds. As we gather from the brief the point is that three men, Gaillard, Harrison and Richardson constituted the Board of Election Commissioners. Only two of them, Gaillard and Harrison, signed the certificate of the canvass showing the result of the election. There is no express provision of law that all the members of this board should sign the certificate. The certificate states that the three members met at the City Hall * * * and proceeded to publicly canvass the vote. The Board of Election Commissioners are required by Section 2, Chapter 6415 Acts of 1912, to canvass and declare from the said returns of the inspectors and clerk of election, the result of said election, etc., and it is therein provided that said election shall in all respects be conducted as nearly as may be in compliance with the laws regulating the holding, returning, certifying and canvassing of city elections. Two sections of the Charter Act of the

City of Jacksoville make it the duty of the Election Commissioners to meet at their office and publicly proceed to canvass the vote on the day following any election. Section 43, Chapter 4498 Laws of 1895, and Section 7, Chapter 4301. The certificate before us shows that the Commissioners met the day after the election and canvassed the returns. The further contention is that it does not appear that any notice of this meeting was given to Richardson, who did not sign the certificate, and therefore the act of the canvassing by two of the three Commissioners was void. We think the statute itself gave each Commissioner notice when to meet and canvass the election returns, and no other notice was necessary. The canvass was made by two of the Commissioners, and the third Commissioner, even if not present, had statutory notice of the time required by law for the canvass to be made. We think the certificate shows a legal canvass of the vote.

It is contended that the certificates of the result of the election were executed merely by the two members of the Board of Election Commissioners, and do not pretend to be the certificate of the Board. We do not think this fact renders the certificate fatally defective. As a matter of fact and law a quorum acted, all had statutory notice of the meeting, and their act was the act of the Board. 23 A. & E. Ency. Law, 2nd ed. 366.

Another objection to the decree is that it appears from the certificate signed by Harrison and Gaillard to show the result of the election was for some unexplained reason made from, and only from the returns in the office of the City Recorder, and not from the returns filed with the Chairman of the Board of Election Commissioners as required by Section 2, Chapter 6415 Acts of 1912. We find no error under this contention. Under the Act, the

returns were in duplicate and both of equal dignity, authority and probative force.

The next contention by appellant is that Chapter 6237 Laws of 1911, applies only to proceedings brought or to be brought under then existing laws. We do not so construe the Act. By its terms it is broad enough to cover proceedings brought or to be brought under subsequent statutes.

The next contention is that Chapter 6237 is unconstitutional because the title does not indicate fairly or clearly the contents or nature of the Act, and the true effect of the same. An examination satisfies us this contention is without merit. The title is in all respects sufficient, and its meaning plain.

The next contention is that there is a conflict between Sections 3 and 9 of the Act of 1912, in this, that in Section 3 it is provided that the principal and interest of the bonds shall be payable in "gold coin of the United States of the present standard of weight and fineness. In Section 9 containing the form of the bond it is provided that the principal and interest shall be payable in gold coin." We do not think there is any conflict between these sections. They must be construed together. When "gold coin" is mentioned in Section 9 in the form of the bond, it necessarily means the kind of gold coin described in Section 3, *i. e.* gold coin of the United States of the present standard of weight and fineness.

Only one question of fact is presented and argued in the brief of appellant, and that is that it appears from the evidence that one member of the Canvassing Board never appeared or acted, and hence that the entire proceeding is illegal. We have heretofore considered this uqestion and held that it is not tenable. Finally we have examined the record with great care and we find that

the decree appealed from is sustained by the allegations of the petition and the proof offered, and it is, therefore, affirmed.

TAYLOR, COCKRELL AND WHITFIELD, J. J., concur.

SHACKLEFORD, C. J., absent.